# MICHAEL LAMONT COLEMAN *v.* STATE OF MARYLAND

[No. 75, September Term, 1969.]

*Decided October 30, 1969.*

The cause was argued before MURPHY, C.J., and AN-DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Charles L. Shuman* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Fred K. Grant, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The only contention presented by Michael Lamont Coleman, also known as Michael Gross, in attacking his convictions at a court trial in the Criminal Court of Baltimore of assault upon Gertrude Grunder with intent to murder and the robbery of Gladys Garcia with a deadly weapon is that an identification of him made at the trial by Barbara Prkna, an eyewitness to the crimes, was erroneously admitted in evidence.

On 7 March 1968 the Washington Boulevard Branch of the Union Trust Company was robbed. Mrs. Grunder was employed as a teller at the bank. Shortly before 2:00 P.M. she heard "a scuffling sound and a shout or a cry." Then she heard a shot and turned and "saw a colored man half-way over the counter with a gun smoking in his hand." The gun was in his right hand and he was reaching with his left hand for a cloth coin bag in the working area of another teller, Mrs. Garcia. Mrs. Grunder had been shot.[1] "Then they just said, 'Get down' and

---

1. Mrs. Grunder was shot in the middle of her back about a half inch to the left of her spine. She had been turned away from Mrs. Garcia's position behind the counter when the shot was fired.

I automatically got down" behind the counter. "They pushed the alarm * * * the teller's alarm, A.D.T." She could not identify the robber.

Mrs. Garcia was performing her duties as a teller when she saw the hands of a "colored person" reaching over the counter for a bag of coins. She saw a gun in one of the hands, tried to hide beneath the counter and heard a shot. When she stood up a short time later she saw blood on the back of Mrs. Grunder's blouse.[2] Nineteen dollars in pennies, contained in a cloth bank bag, had been stolen. It was money obtained by her from the bank for use in connection with her duties as a teller. She did not see the robber's face; she could not identify the robber.

The manager of the bank branch, Frank Kanoke, was working at his desk about 1:45 or 1:50 P.M. on 7 March. "I heard some scuffling and I heard screaming and a report or a sound like a gunshot fired going off. I got up from my desk to go back to find out what was going on. About this time the man was trying to get out the door. He had a pistol. He pointed it at me or at least to my area * * * and I ducked. * * * I didn't see his face well at all." He could not "positively identify the individual who robbed the bank."

Mrs. Barbara Prkna was one of some thirty customers in the bank at the time of the robbery. She was at Mrs. Garcia's window. "Mrs. Garcia and I were talking and she was getting ready to cash my check and I felt there was someone close to me, somebody come in. And I noticed someone jumped up kind of leaned over the counter. Well, at the time I thought perhaps he was picking up for Mrs. Garcia or trying to get her attention or some reason or another. She looked up rather startled and the

---

She was admitted to a hospital as a result of her injury and was discharged twelve days later.

2. Mrs. Garcia also went to the hospital. She had a sensation of burning about her head. "They exrayed me and nothing was wrong with me except I kind of was burning from the gun powder."

person jumped up again and reached over the counter—a grill work on top—and made a grab for the money bag that was sitting. You could see him from where I was, but not from over the—from over two or three feet over, and I could tell then this person was trying to take the money from the next teller. She made a motion to go towards this money holding the bag down, and the gentleman had a gun in his hand, which at the time I thought was a starter pistol or playing gun, and he shot at her." Mrs. Prkna looked at his face. Asked how long she looked at his face she said, "Seemed like quite awhile at the time. Three minutes? Three or four minutes?" She made a positive in-court identification [3] of the appellant as the robber. This identification came into evidence at that point without objection. The robber grabbed the money bag and went to the door. "He was having trouble opening the door. He turned around, kind of waived his gun around. He was quite scared looking and then he got out * * *. He did have the money bag in his hand. He did manage to get off with one." On cross-examination it was elicited that Mrs. Prkna had attended a lineup at Central Police Station. She said the appellant was in that lineup. At this point defense counsel moved to strike her testimony "till the State establishes that that lineup was conducted fairly." He contended that until the State showed that the lineup was conducted fairly, "until it was shown [the in-court identification] has not been tainted by a prior confrontation it should not be admitted." [4] The trial court said it understood that the appellant moved to exclude the in-court identification and denied the motion. Defense counsel reserved the right "to renew the motion at a later time in the course of the trial." He then examined the witness in detail

3. As used herein "in-court identification" means a judicial identification made at the trial on the general issue of guilt or innocence as distinguished from a judicial identification made at a preliminary hearing.

4. For a discussion of the procedure upon challenge of evidence of identification see *Smith and Samuels v. State*, 6 Md. App. 59, 67-70. See also *Miller v. State*, 7 Md. App. 344.

with respect to the lineup at the Central Police Station. He elicited that there were two or three other girls she knew who were at the lineup, that about five men were in the lineup, that she was told nothing about any of the men in the lineup, that all were "Negroes," that the appellant had on dark clothing and a raincoat, a shirt but not a white shirt—a dark one, no tie, that she observed the men about five minutes, that the appellant did not have a mustache, that his hair was about the same length as his hair was at the trial, that others in the lineup were dressed in a manner similar to the appellant. It was also elicited from the witness that she had been shown photographs but she "did not positively identify from photographs." She had been asked to pick out a picture of anyone she thought resembled the robber and she picked out three "but not positively." The three photographs were of different men. She thought the appellant was among the three she picked out. She did not recall seeing in the lineup the other two men whose photographs she had picked out. She was shown photographs within an hour after the commission of the crime and on several occasions thereafter. The three photographs she picked out, "not positively" as the photograph of the robber—"but there was a resemblance in the picture and one way or another to the person I remember seeing"—were apparently not picked out at the same viewing but one each during the several occasions she was shown photographs. The last one she picked out was about four days before the lineup. After all this it was adduced that she had not positively identified the appellant as the robber at the lineup. She was then asked: "If you were not positive at the time of the lineup why are you positive that this is the man today?" She replied: "The conditions were quite different at the lineup. They were standing on the platform and he had lights above him, all around him. I stated at the time I did think that was the individual, though he appeared taller in the lineup. And, a lighter complexion when I saw him in the Court. He was facing the exactly—excuse me—at the

hearing—what you would call it, he was facing me exactly as he did in the bank, and when he turned around I also remember seeing a full-view face of him and I was positive." It was then elicited from her that she had attended a preliminary hearing after viewing photographs and attending the lineup, that at the hearing no defendant other than the appellant was present, that "the police brought in just this one man at the preliminary hearing and the Judge at the preliminary hearing said, 'Michael Coleman, you are charged with assault with intent to murder and robbery with a deadly weapon.' " It was at that time that she first made a positive identification of the appellant as the robber.

The appellant testified on the limited issue of the constitutionality of the lineup. He said that Officer Norman Woingust had advised him of his right to have an attorney present at the lineup and he requested the presence of a lawyer. "The officer went out and got a lawyer and the lawyer told me he was my lawyer." He did not know the lawyer's name and did not see him again after the lineup.

Defense counsel renewed the motion to strike the testimony of Mrs. Prkna. The State offered the testimony of Officer Woingust on the issue of the lineup. He testified that he had advised the appellant of his right to be represented by counsel at the lineup, reading him a waiver of rights form. The appellant did not sign the waiver and said he wanted a lawyer. Woingust presented the request to the Municipal Court and later that afternoon was told by the judge that the Clerk of the Court would send an attorney to the lineup. The lineup was conducted at 8:00 P.M. on 2 April 1968 and James McAllister, Esq. was present at the lineup to represent the appellant. The lineup identification report was admitted in evidence. It consisted of two sheets. It showed that six "colored men" were in the lineup, designating the age, height, weight and clothing of each. The appellant was originally in the fourth position. Twenty witnesses viewed the lineup. Four of them were listed on the

first sheet. Of those four Sophia Ballinger positively identified No. 4 and William E. Bundy was not sure as to No. 4. Identification was negative as to the other two witnesses. Under "remarks" it was noted "4 changed 6," but it did not indicate when the change was made. The second sheet listed 16 witnesses. Of these Gloria Baker and Carolyn Taylor positively identified the man in No. 5 position and Edward Lewis the man in No. 4 position. Under "remarks" it was noted "#5 to #4" but there was no indication when the change was made. Identification by the other 13 witnesses, including Barbara Prkna, Gladys Garcia, Gertrude Brunder and Frank Knoke (sic) was indicated as negative. The lineup report was not explained. Woingust said that neither he nor any other officer in his presence suggested to any witness that the appellant was the one to be identified and that Mr. McAllister was present during the entire conduct of the lineup. Defense counsel again renewed his motion to strike Mrs. Prkna's in-court identification. The court denied the motion. It thought that the police "at least took extraordinary precautions to comply with the Wade rule." [5]

The legality *vel non* of the lineup is not the issue here.[6] Mrs. Prkna, whose in-court identification is challenged,[7] did not identify the appellant at the lineup and, if the lineup report showed that other witnesses identified the appellant at the lineup, it is clear that the line-

---

5. *United States v. Wade*, 388 U. S. 218.

6. The appellant does not claim that the lineup was unfairly conducted. We note, however, that in *United States v. Wade, supra,* the Court expressly left open the question "whether the presence of substitute counsel might not suffice where notification and presence of the suspect's own counsel would result in prejudicial delay." See note 27, at 388 U. S. at 237. We have had no occasion to rule on the point.

7. Although there was no pretrial motion to suppress the in-court identification and although no objection was made when it was offered, we think it was challenged as soon as objection became apparent from evidence that the identifying witness had viewed the appellant in a lineup. Md. Rule 522d2. And the appellant also made known his objection to the court below, prior to its ruling on the admissibility of the in-court identification. Md. Rules 522b and 725f.

up report was received only as to the legality of the line-up and not as to substantive evidence of a pretrial identification. Nor is the fairness of the photographic viewings an issue as Mrs. Prkna made no identification by photograph. The question is, whether, in the totality of the circumstances here shown, the confrontation of the appellant by the witness at the preliminary hearing had the, effect of being so impermissibly suggestive as to taint her in-court identification and render it inadmissible. If so its introduction could not be harmless error beyond a reasonable doubt, *Chapman v. State of California,* 386 U. S. 18, because the in-court identification by Mrs. Prkna was the only evidence to establish that the appellant was the perpetrator of the crimes charged. See *Smith and Samuels v. State, supra,* at 65. This question encompasses two issues: (1) was the confrontation at the preliminary hearing so impermissibly suggestive as to be a denial of the appellant's Fourteenth Amendment right to due process of law; and (2) if so, did the State establish "by clear and convincing evidence that the in-court identification was based on observations of the suspect other than the confrontation identification," that is, that it had an "independent source." *United States v. Wade, supra,* at 240 and 242.

We have held that, with exceptions not here pertinent, a preliminary hearing is not such a critical stage of the criminal proceedings as to require the presence of counsel. *Crumb v. State,* 1 Md. App. 98. And we held in *Tyler v. State,* 5 Md. App. 265, at 272-273, that "the rationale of *Wade* and *Gilbert* [8] is not applicable to confrontations at a public pretrial judicial hearing presided over * * * by a judicial officer since what occurred there is not only the antithesis of the 'privacy results in secrecy' element highlighted in *Wade,* but the accused has the opportunity for 'a meaningful confrontation' of the State's case at the trial through the ordinary process of cross-examination of the State's witnesses and the presentation of the evidence of his own witnesses, including, if

8. *Gilbert v. State of California,* 388 U. S. 263.

necessary, the judicial officer who presided at the hearing." See also *Smith and Samuels v. State, supra,* at 64, note 3; *Bowen v. State,* 5 Md. App. 713, 715; *Palmer v. State,* 5 Md. App. 691, 698; *Boswell and Poe v. State,* 5 Md. App. 571, 581. But we also noted in *Tyler,* at 273, "[T]he manner and mode of the identification at the preliminary hearing is capable of reconstruction at trial so that the trier of fact may * * * be in a position effectively to scrutinize the pretrial identification process as it affected the identification at trial." Although the identification procedure at the preliminary hearing in *Tyler* left "much to be desired," we did not think that the identification at the preliminary hearing there "was in any sense prejudicially inspired." We said that the fact that a previous identification had been made by the in-court identifying witness upon a fair photographic procedure, that the witness had an ample opportunity to observe the accused during the crime, and that the witness testified at trial that he did not make a positive identification of the accused at the preliminary hearing until, when on the witness stand, he "looked right at his face," were factors entitled to consideration in determining whether the identification at trial was independent of and unstimulated by the identification made at the preliminary hearing. In the light of those factors we concluded that the in-court (trial) identification was not the product of an unconstitutionally tainted pretrial confrontation. 5 Md. App. at 274. Thus we have recognized that a confrontation at a preliminary hearing, not *per se* illegal by the absence of counsel, may nevertheless taint an identification made at trial, and whether it does or not depends upon all the relevant circumstances in each case.

We cannot say, in the unusual circumstances existent in this case, that the identification at the preliminary hearing was not "prejudicially inspired." It is not contradicted that the appellant alone was brought to the bench by police officers, that the judge indicated that the appellant was the accused by reading the charge to him, saying in substance, "Michael Coleman, you are charged

74

with assault to murder and robbery with a deadly weapon," that the police knew the witness had been unable to identify the appellant on previous occasions when given the opportunity to do so, and that it was thereafter at the hearing that the witness for the first time positively identified the appellant as the man she had seen committing the crimes. Although other people were in the courtroom, the only people in front of the judge were the identifying witness, several other witnesses, the police and the appellant. We said in *Watson v. State,* 7 Md. App. 225, 234: "[i]t is readily evident that where the police, by pre-design, arrange a one-to-one confrontation between the victim [or eyewitness] and the accused in the police station, such a circumstance, of itself, would necessarily have great bearing on the question of whether there has been a denial of the accused's Fourteenth Amendment right to due process of law." See *Stovall v. Denno* [388 U. S. 293], at page 302, where the Supreme Court noted that "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." Of course a preliminary hearing is a proper, but not necessary, proceeding. *Weddle v. State,* 4 Md. App. 85, 92. Its basic purpose is to have a judicial determination whether to hold the accused for action of the grand jury. *Timbers v. State,* 2 Md. App. 672, 673. If the authorities here thought it desirable to have a preliminary hearing, in order to assure that the determination to hold the appellant for action of the grand jury was fairly resolved in the light of the failure of Mrs. Prkna to identify the appellant on prior occasions, it was entirely feasible for them to arrange, with the consent of the hearing judge, that the confrontation not be one-to-one and that it not be made apparent to the witness that the appellant was the one who stood accused.

We hold that the confrontation at the preliminary hearing, in the circumstances, was so impermissibly suggestive as to violate the appellant's Fourteenth Amendment right to due process of law. See *Palmer v. State,*

*supra;* Cf. *Smith v. State,* 6 Md. App. 23; *Coit v. State,* 7 Md. App. 70; *Wethington v. State,* 7 Md. App. 79.

We now turn to the question whether the in-court identification was properly admitted as having a source independent of the pretrial identification. The State must show by clear and convincing evidence that the in-court identification was based upon observations of the appellant other than the illegal confrontation at the preliminary hearing. The test for such determination was set forth in *United States v. Wade, supra,* at 241:

> "We think it follows that the proper test to be applied in these situations is that quoted in *Wong Sun v. United States,* 371 U. S. 471, 488, 83 S. Ct. 407, 417, 9 L.Ed.2d 441, '[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. Maguire, Evidence of Guilt, 221 (1959).' See also *Hoffa v. United States,* 385 U. S. 293, 309, 87 S. Ct. 408, 17 L.Ed.2d 374. Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup."

Mrs. Prkna had the opportunity to observe the criminal act. She was two or three feet from the robber when he committed the crime and said she looked at his face

as he was "trying to jump up to the counter." She also saw his face when he turned while attempting to get out the door of the bank. Asked how long she looked at his face, she said that "all told" it "seemed like quite awhile at the time. Three minutes? Four minutes?" In her testimony at trial she was able to describe his clothing— "he had dark clothes on, dark pants, dark shirt." It was not shown what description she had given the police. She said she was not afraid during the commission of the crime and was not excited. "I got excited later, but I wasn't excited at that particular time." On cross-examination she was asked, "Is there anything distinctive about the face of the man you saw rob the bank that would make you remember it? Was there a scar? Was there any marks on him? Was there any difference in his haircut? Or his mustache? Or anything that would make you recognize this man above all other?" She replied, "None the things you mentioned. The first thing that might help was that he was quite younger." She thought he was not more than 21 or 22. But there was nothing distinctive about his physical features or his clothes. She thought he was about 5 feet 7 inches in height.[9] However, her opportunity to observe the criminal act must be considered in the light of her subsequent attempts to identify the robber. She viewed photographs on several occasions. On three different times she picked out a picture without being certain that it was of the appellant. The record does not reveal precisely how many times she was shown photographs by the police or how many photographs were shown her or when they were shown her, or whether or not any one or more of the photographs she picked out was of the appellant (she thought one of them was) but from the rebuttal testimony of Officer Woingust it appears that at some time a photograph of the appellant was among those viewed by her. She did not identify the appellant in the

---

9. In the lineup report the appellant was described as being 20 years of age, five feet eight inches in height and weighing 142 pounds.

lineup. She said she "did not positively identify" the appellant at the lineup but the lineup report as to her shows identification as negative, although as to another witness the designation is "not sure." She explained her ability to identify the appellant at the preliminary hearing and her inability to identify him at the lineup as due to the fact that "the conditions were quite different at the lineup. They were standing on a platform and he had lights above him, all around him * * * and a lighter complexion when I saw him in the Court." At the hearing "he was facing me exactly as he did in the bank, and when he turned around I also remembered seeing a full face of him and I was positive." But it is patent that she had ample opportunity to observe the appellant carefully at the lineup and that he was standing in the full glare of lights. We understand it is the usual practice to display those in a lineup both full face and profile. Her explanation must be considered in the light of the facts concerning the confrontation at the hearing. Not only was it a one-to-one confrontation but it was made apparent to her that the appellant was the person the police had charged with the crime.

We are unable to say, in the circumstances here, as disclosed by the evidence before us, that the State met its burden of showing by *clear* and *convincing* evidence that the in-court identification of the appellant by Barbara Prkna was based on observations of him other than the illegal confrontation at the preliminary hearing. We are constrained to conclude that the in-court identification had been come at by exploitation of the impermissibly suggestive confrontation at the preliminary hearing rather than by means sufficiently distinguishable to be purged of the primary taint. Compare *Joyner v. State,* 7 Md. App. 692.

We hold that the trial court erred in not excluding the in-court identification. As that identification was the only evidence to show the criminal agency of the appellant,[10]

10. The lineup report indicates that a "Sophia Ballinger" made a positive identification of the appellant at the lineup. The in-

the error was not harmless beyond a reasonable doubt and the judgments must be reversed.

We point out in summary of the rules of law here pertinent to the admission of an in-court identification that ordinarily it is properly admissible:

(1) if not shown to be tainted by an illegal pre-trial confrontation; or

(2) even when a pre-trial confrontation was illegal, if the in-court identification is shown by the State to have an independent source by clear and convincing evidence that it was come at by observations of the defendant other than at the illegal confrontation.

Thus, it may well be that on retrial of the case the State will be able to adduce more comprehensive evidence as to the circumstances attending the confrontation of the appellant by Mrs. Prkna at the preliminary hearing which would be sufficient to overcome an initial showing by the appellant that the pre-trial confrontation was impermissibly suggestive. If so, the confrontation at the preliminary hearing would not taint an in-court identification by Mrs. Prkna and such in-court identification would be properly admissible. Or if the State cannot overcome a showing that the confrontation at the preliminary hearing was illegal, it may be able to adduce evidence which would be clear and convincing that an in-court identification by Mrs. Prkna was based on observations of the appellant by her other than the illegal confrontation identification, in which event her in-court identification would be properly admissible. Or, if the State cannot adduce such evidence, it may be able to produce witnesses other than Mrs. Prkna who could make a properly admissible in-court identification sufficient to establish the criminal agency of the appellant.

*Judgments reversed: case remanded for a new trial.*

---

dictment charging armed robbery contains on its face the name "Sophia Bollingo" as a witness. She was not called to testify at the trial.