JEROME MARTIN *v.* STATE OF MARYLAND

[No. 594, September Term, 1972.]

*Decided June 6, 1973.*

The cause was argued before MOYLAN, POWERS and GILBERT, JJ.

*Charles Lee Nutt* for appellant.

*Josef E. Rosenblatt, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, John C. Hancock, State's Attorney for Charles County* and *C. R. Nalley, Deputy State's Attorney for Charles County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant, Jerome Martin, was convicted in the Circuit Court for Charles County by Judge James C. Mitchell, sitting without a jury, of armed robbery. His contentions on appeal reduce themselves essentially to three:

(1) That evidence of a stolen revolver, found in his control, was unconstitutionally obtained;

(2) That an in-court identification of him by the robbery victim was unconstitutionally tainted; and

(3) That the evidence was legally insufficient to sustain the conviction.

Because of our feeling that the appellant must prevail on the search and seizure question, it is unnecessary to reach his other two contentions. The armed robbery in question occurred on March 3, 1971, in Charles County. Among the items stolen was a .38 caliber Smith and Wesson revolver, bearing the serial number R29660. Five and one-half months after the Charles County robbery, the appellant was stopped in the District of Columbia by Metropolitan Police. They searched the car that he was driving and recovered the Smith and Wesson revolver, which a records check showed had been stolen in Charles County. A pretrial hearing was held on the appellant's motion to suppress evidence of the revolver as having been unconstitutionally come upon. It is from the denial of that motion that the appellant now appeals.

The State advances a broad phalanx of constitutional theories to justify the ultimate seizure of the revolver from the automobile, in the apparent hope that one, at least, of them will penetrate the redoubt. None of them does.

At approximately 11 p.m. on August 19, 1971, Officer James Davis and Officer Kenneth Allen were on routine patrol in Washington, D.C. As they passed the Capitol Cadillac storage lot, a fenced-in area with a chain across the entrance, they observed two individuals, one of whom turned out to be the appellant, duck down behind a vehicle stored on the lot. The officers proceeded onward until they were out of view of the parking lot. They then reversed their direction and returned to the lot. The two men previously seen on the lot were now leaving it. They were stopped. They explained to the officers that they were looking at cars on the lot but acknowledged that they did not have permission to be there. The officers frisked the pair, recovering no weapons. The State advances the theory that the "stop" and the "frisk" were reasonable under *Terry v. Ohio*, 392 U. S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968), and *Sibron v. New York*, 392 U. S. 40, 88 S. Ct. 1889, 20 L.Ed.2d 917 (1968). The State is correct that the circumstances were such as to represent a classical justification for a reasonable "stop." In a commercial neighborhood late at night, the subsequent "frisk" for weapons carried out by the police officers in the interest of self-protection was also reasonable. The difficulty with the State's "stop and frisk" theory is that it "dead ends" and does not carry them the next necessary step. The search of the appellant's nearby automobile cannot be justified as part of the "stop and frisk."

The State next advances the theory of "search incidental to a lawful arrest" under *Chimel v. California*, 395 U. S. 752, 89 S. Ct. 2034, 23 L.Ed.2d 685 (1969). It advances this theory in two variant forms. The "frisk" of the appellant's companion produced a marihuana cigarette. Officer Allen testified that he arrested the appellant "for being with somebody that had contraband" on him. It is unnecessary to deal with the dubiety of the seizure of the suspected marihuana cigarette in the course of a "frisk" limited in

scope to a "pat down" for weapons, since a single marihuana cigarette in the pocket of a companion was palpably insufficient to justify the arrest of the appellant. The officer stated, as well however, that he arrested the appellant for tampering with an automobile. Since Officer Davis knew that the appellant had been arrested in that same precinct two months earlier on the charge of tampering with an automobile, his presence on the enclosed automobile storage lot, coupled with his furtive behavior when spotted by the police, may well have mounted up to probable cause for a warrantless arrest on the charge of tampering. Such a charge was placed and later nol-prossed. It is clear, however, that even a valid arrest upon the street will not justify, as an incident of that arrest, the thorough search of an automobile some appreciable distance away. *Chimel v. California, supra, Brown v. State,* 15 Md. App. 584, 292 A. 2d 762; *Soles v. State,* 16 Md. App. 656, 299 A. 2d 502.

When the appellant and his companion were arrested, the officers noticed a 1971 Plymouth with Virginia rental license tags sitting across the street with its blinking lights on. The "frisk" of the appellant produced a set of automobile keys. In response to questioning, the appellant stated that the car was in his possession. The automobile was leased to the appellant's girlfriend. The officers did not ask the appellant for permission to search the car for either a registration card or for the rental agreement. They did not make a radio check of any sort to see if the car was listed as stolen. They proceeded to search it, advancing as one of their rationales an effort to ascertain if it contained a proper registration card. Officer Allen entered the car to look in the glove compartment. He found a rental agreement between Avis Rent-A-Car and Miss Marie Lewis. While examining the glove compartment, he noticed a piece of leather sticking out from the front seat. He pulled it out and found a leather bag which contained a shoulder holster which contained a .38 caliber Harrington and Richardson revolver. Upon the theory that that discovery gave them probable cause to believe that the automobile contained other weapons, coupled with the exigency of the circumstances, the officers

undertook a more thorough search of the automobile under *Carroll v. United States,* 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925). They used the keys which had been recovered in the "frisk" to open the trunk. They found hidden under an armrest in the interior of the automobile the .38 caliber Smith and Wesson revolver which linked the appellant to the robbery in Charles County some five and one-half months earlier.

We need not reach the question of whether the appellant's automobile keys were legitimately seized in the course of a "frisk" for weapons. We need not reach the question of whether the finding of the first weapon, if legitimate, would give rise to probable cause to believe that the automobile contained other weapons. We need not reach the question of whether the sighting of a piece of leather resembling a shoulder holster in plain view does or does not justify a further search to see 1) whether the leather is indeed a holster and 2) whether the holster contains a contraband gun, which gun itself clearly was not in plain view. See *Coolidge v. New Hampshire,* 403 U. S. 443, 91 S. Ct. 2022, 29 L.Ed.2d 564 (1971); *Brown v. State, supra.* The only prior valid intrusion which could possibly have invoked the Plain View Doctrine was the entry into the automobile to go through the glove compartment for documents establishing ownership. We see no predicate for such an entry. There was no probable cause to believe that the automobile was stolen nor did the police seek to advance such a theory. The automobile was clearly not abandoned. The automobile was not entered with the consent of the appellant.

No prior valid intrusion having been established, it is unnecessary to decide whether the Plain View Doctrine was otherwise validly invoked nor to decide whether the fruits of the plain view seizure, even if legitimate, gave rise to probable cause for a more extensive search under the *Carroll* Doctrine. The Smith and Wesson revolver having been unconstitutionally seized, all evidence pertaining to it should have been suppressed.

> *Judgment reversed; case remanded for a new trial.*