# PAUL MONROE HOWELL *v.* STATE OF MARYLAND

[No. 769, September Term, 1972.]

*Decided July 13, 1973.*

The cause was argued before ORTH, C. J., and MOYLAN and CARTER, JJ.

*Gary Huddles* for appellant.

*Emory A. Plitt, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *Jean Spotts, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant, Paul Monroe Howell, was convicted in the Circuit Court for Baltimore County by Judge Walter R. Haile, sitting without a jury, of daytime housebreaking, assault with intent to murder and possession of marihuana. Upon this appeal, he raises four contentions:

(1) That his in-court identification by the victim of the assault and housebreaking should have been suppressed as the product of an impermissibly suggestive pretrial photographic viewing;

(2) That a State's witness was permitted to testify after having violated a sequestration order;

(3) That inculpatory oral admissions were induced by promises and should not have been received into evidence; and

(4) That the marihuana was the fruit of an unconstitutional search and seizure.

### The Search Incident

We shall consider first the search and seizure which produced the contraband marihuana. The breaking and

entering of the home of Adrian Merryman and the concomitant assault upon Mr. Merryman occurred on May 16, 1972. On May 18, Corporal James Raymon, of the Baltimore County Police Department, showed a series of photographs to Mr. Merryman, from which Mr. Merryman selected a photograph of the appellant as his assailant. Corporal Raymon applied for and received an arrest warrant for the appellant. A lookout for the appellant and his automobile was broadcast via police teletype.

On the basis of the teletyped lookout, particularly upon the basis of the description of the appellant's automobile, including the license tag number, three Baltimore City detectives detained the appellant and his automobile upon the parking lot of a drive-in restaurant at 11805 Reisterstown Road, just across the Baltimore County line from Baltimore City, at approximately 12:50 p.m. on May 19. Corporal Raymon was immediately notified and had responded to the scene by approximately 1 p.m. The appellant was leaning against his automobile on the driver's side. A female companion was seated on the right front seat. Corporal Raymon arrested both the appellant and his female companion. Corporal Raymon searched the automobile and recovered from beneath the right front seat a package of marihuana. At issue is the legitimacy of that search and seizure.

In many cases where a motorist is arrested and his car is searched, a search incidental to a lawful arrest under *Chimel v. California*, 395 U. S. 752, 89 S. Ct. 2034, 23 L.Ed.2d 685 (1969), and a search pursuant to the "automobile exception" under *Carroll v. United States*, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925), may overlap. They do not, however, necessarily overlap. A search may at times be good upon both theories, at times good upon either one of the theories but not upon the other, and at times good upon neither theory. In the case at bar, the search of the automobile cannot be predicated upon the "automobile exception" because of the failure of Corporal Raymon to establish probable cause to believe that the automobile contained evidence of crime, one of the two necessary preconditions for

the invocation of this exception to the basic proposition that all searches carried out without a warrant are *per se* unreasonable. *Carroll v. United States, supra; Chambers v. Maroney,* 399 U. S. 42, 90 S. Ct. 1975, 26 L.Ed.2d 419 (1970); *Coolidge v. New Hampshire,* 403 U. S. 443, 91 S. Ct. 2022, 29 L.Ed.2d 564 (1971).

If the search here is to be found legitimate, it must be as a valid search incident to a lawful arrest under *Chimel.* Whatever form of detention the appellant may have been under during the approximate ten-minute period between being stopped by the Baltimore City detectives and the arrival of Corporal Raymon, see *Terry v. Ohio,* 392 U. S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968); *Sibron v. New York,* 392 U. S. 40, 88 S. Ct. 1889, 20 L.Ed.2d 917 (1968), the appellant was formally arrested by Corporal Raymon moments after the corporal arrived upon the scene. There is no question but that the search was sufficiently contemporaneous with the arrest to satisfy the strictures of *Preston v. United States,* 376 U. S. 364, 84 S. Ct. 881, 11 L.Ed.2d 777 (1964).

Nor does the fact that the detaining detectives may have executed a "frisk" or external "pat down" of the person of the appellant for weapons exhaust anticipatorily the right to make a search incident to a lawful arrest. The search contemplated by the "search incident exception" is more intensive in nature than that contemplated by a mere "frisk" for weapons under *Terry* and *Sibron.* It has as its purpose not simply the interest of protecting the arresting officer and depriving the prisoner of potential means of escape, *Closson v. Morrison,* 47 N. H. 482 (1867), but also the interest of preventing the destruction of evidence by the arrested person, *Reifsnyder v. Lee,* 44 Iowa 101 (1876); *Holker v. Hennessey,* 141 Mo. 527, 42 S. W. 1090 (1897). And see *People v. Chiagles,* 237 N. Y. 193, 196, 142 N. E. 583 (1923) (opinion by Cardozo, J.); *United States v. Rabinowitz,* 339 U. S. 56, 72, 70 S. Ct. 430, 94 L. Ed. 653 (1950) (dissenting opinion by Frankfurter, J.); *Brown v. State,* 15 Md. App. 584, 292 A. 2d 762.[1]

---

1. The appellant's argument that Corporal Raymon had time to get a search warrant is irrelevant, since the existence of exigent circumstances is not a precondition to a "search incident."

The question at bar is rather the permissible scope — the range in space — the perimeter — of an admittedly proper "search incident." Adopting the analysis of Justice Frankfurter in his series of dissents in *United States v. Rabinowitz, supra; Harris v. United States,* 331 U. S. 145, 67 S. Ct. 1098, 91 L. Ed. 1399 (1947); and *Davis v. United States,* 328 U. S. 582, 66 S. Ct. 1256, 90 L. Ed. 1453 (1946), *Chimel* made clear that a proper search incident extends not only to the person of the arrestee but to that area within his "immediate physical control." "Immediate physical control" and "immediate physical surroundings" are defined as that area "which may fairly be deemed to be an extension of his person." That search perimeter is described by *Chimel* as being the area within the "reach," within the "grasp," within the "lunge" of the arrestee.

The arrest of a motorist does not automatically confer the right to search his automobile, or any part of it, as a necessary incident of the arrest. See *Martin v. State,* 18 Md. App. 112, 305 A. 2d 197, where the arrest of a suspect in the middle of the street was held not to confer the right to search his automobile parked at a curb half-a-street width away. And see *Soles v. State,* 16 Md. App. 656, 299 A. 2d 502, where the arrest of a suspect behind the wheel was held not to confer the right to search a locked trunk as an incident of the arrest. On the other hand, see *Peterson v. State,* 15 Md. App. 478, 292 A. 2d 714, where the arrest of four persons braced up against an automobile was held to confer the right to search the interior of that automobile as an incident of the arrests. The automobile of an arrested motorist is neither automatically included in whole, automatically included in part and excluded in part, nor automatically excluded in whole from the permissible search perimeter. Rather must each search be analyzed on a case-by-case basis, bearing always in mind the purposes giving birth to the "search incident exception" as one measures the perimeter necessary to serve those purposes. The area within "the lunge, the grasp, or the reach" of the arrestee — the area which may be deemed "a fair extension of his body" — may intrude upon some, or even all, automobile space,

just as it intrudes upon other, non-automobile space. Conversely, it may not. The word "automobile" is not a talisman, for purposes of automatic inclusion or exclusion. It is simply so much cubic footage of space through which a perimeter measured from an arrestee — be he motorist, passenger or pedestrian — may or may not pass.

In the case at bar, the arrestee, not yet thoroughly searched, was standing, unshackled, by the door of his automobile. His female companion, who was also arrested, was seated upon the right front seat. The area beneath the right front seat, from which the marihuana was recovered, was, we hold, within the legitimate search perimeter emanating from the appellant. *Peterson v. State, supra,* 489-490. It was within the range from which a weapon could easily have been recovered to endanger the officer or to make good an escape. It was within the range from which readily destructible evidence could easily have been grabbed and destroyed. It was a proper "search incident" to a lawful arrest. There was, therefore, no constitutional impediment to the introduction into evidence of the seized marihuana.

### The Photographic Viewing

The remaining contentions can be dealt with briefly. The appellant predicates his argument that the in-court identification of him by Mr. Merryman should have been suppressed upon the foundation that it was the tainted product of an impermissibly suggestive pretrial photographic viewing. Upon our constitutionally mandated, independent review, we see nothing even mildly impermissibly suggestive about the photographic viewing procedure, let alone anything so suggestive as to give rise to "a substantial likelihood of irreparable misidentification." Photographs were shown to Mr. Merryman by Corporal Raymon two days after the offense. Mr. Merryman had already given the police a rather complete description of his assailant. Between 12 and 20 photographs were shown. That of the appellant was placed approximately in the middle of the group. Corporal Raymon had made a point of obtaining

photographs all of which resembled the description given by Mr. Merryman as closely as possible. Nothing was said by Corporal Raymon which would have focused upon the photograph of the appellant in any way. Mr. Merryman selected the photograph of the appellant with assurance. The appellant hangs his entire claim upon the statement of Corporal Raymon to Mr. Merryman "that I may possibly have the person involved." The full context of Corporal Raymon's testimony in this regard demonstrates its total innocuousness:

"I went to Mr. Merryman's house and I identified myself and told him I was there and wanted to show him some photographs of some various people and that he had all the time in the world to look through these photographs and that I may possibly have the person involved and with this, he proceeded to look through these photographs. The individual who he identified at that time as the photograph was approximately half way in the pile. My department requires us to display approximately ten photographs. In this instance, I had twenty, including the Defendant."

The statement made by Corporal Raymon in no way zeroed in upon the photograph of the appellant anymore than it did upon any of the other 11 or 19 photographs, as the case may be. It is, in any event, implicit in any photographic viewing that the police are not engaging in an exercise in sheer futility, which would be the case if they did *not* "possibly have the person involved." In the case at bar, the Fourteenth Amendment was not offended. *Simmons v. United States*, 390 U. S. 377, 88 S. Ct. 967, 19 L.Ed.2d 1247 (1968); *Smith and Samuels v. State*, 6 Md. App. 59, 250 A. 2d 285; *Coleman v. State*, 8 Md. App. 65, 258 A. 2d 42; *Spencer v. State*, 10 Md. App. 1, 267 A. 2d 323; *Perkins v. State*, 11 Md. App. 527, 275 A. 2d 517; *Layman v. State*, 14 Md. App. 215, 286 A. 2d 559.

### Sequestration

Witnesses were ordered sequestered at the outset of the

trial. The State had no intention of calling Detective John Hopkins and he was not sequestered. The defense, without prior warning, contested the admissibility of an oral admission made by the appellant and, further, insisted that all policemen who were present when the admission was made be called by the State so that the appellant could cross-examine them. Although we think the court exercised its discretion properly in permitting Detective Hopkins to testify under the circumstances, the point is academic in the context of this case. The only possible prejudice that could have flowed from non-sequestration would have been that Detective Hopkins might have heard Corporal Raymon's testimony about the interrogation of the appellant. When Detective Hopkins took the witness stand, the following transpired:

> "(The Court) First I want to ask a preliminary question. Has he been in Court today during the testimony of Corporal Raymon?
> (The Witness) No, I was in here earlier this morning on a case before you, Your Honor, but I have not been in here since.
> (The Court) You didn't hear Corporal Raymon's testimony?
> (The Witness) No, sir."

Although by happenstance rather than by formal compliance with the sequestration order, *de facto* sequestration was achieved.

### Admissibility of Oral Statement

The appellant gave an oral statement incriminating himself in the daytime housebreaking and in the assault upon Mr. Merryman. The thrust of the appellant's argument is that the police induced him to confess to this crime by promising that they would "clear up" a number of other crimes which he had perpetrated. The trial judge made a number of findings as to specific, first-level facts, which we accept. He found that the police had given the appellant all

of the *Miranda* warnings before taking a statement from him. He found that the oral statement at issue had already been given before the police made mention of any other crimes. He found that after the police had effectively gotten all of the information from the appellant which they desired in this case, that they subsequently asked him to give them information about other crimes which he had perpetrated with the assurance that they would not charge him with those crimes. The police, content to proceed against the appellant on the instant charges, simply wished to close the books on a number of other theretofore "open cases." Accepting those first-level facts as found by the trial judge, we must make a constitutionally mandated, independent review of what to make of those facts. We must resolve for ourselves the ultimate, second-level fact of whether the oral statement was or was not voluntary. *Dillingham v. State*, 9 Md. App. 669, 267 A. 2d 777 (concurring opinion by Orth, J.); *Walker v. State*, 12 Md. App. 684, 280 A. 2d 260. We find, as an ultimate constitutional fact, that the oral statement was voluntary and, therefore, admissible.

*Judgments affirmed.*