# HOWELL *v.* STATE OF MARYLAND

[No. 182, September Term, 1973.]

*Decided April 2, 1974.*

The cause was argued before MURPHY, C. J., and BARNES, SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Gary Huddles, Assigned Public Defender,* and *Arnold Zerwitz, Assistant Public Defender,* for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

Our decision today to reverse the conviction [1] in the Circuit Court for Baltimore County of Paul Monroe Howell, petitioner, for possession of marihuana (Maryland Code (1957, 1971 Repl. Vol.), Art. 27, § 287) discovered by the police in a warrantless search of his automobile conducted incident to his lawful arrest turns on the fact that the record, in certain critical parts, is replete with the "sounds of silence." We conclude that the State has failed to satisfy its burden of demonstrating *on the record* that the facts and circumstances of the incident bring this search within the dictates of *Chimel v. California,* 395 U. S. 752, 89 S. Ct. 2034, 23 L.Ed.2d 685 (1969), where the United States Supreme Court circumscribed the search incident to arrest exception to the basic tenet that a warrantless intrusion is per se unreasonable. *Katz v. United States,* 389 U. S. 347, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967). First, a brief recapitulation of the

1. Howell was convicted by Judge Walter R. Haile, sitting without a jury, in a consolidated trial under indictment No. 44352 which included, among others, counts charging daytime housebreaking and assault with intent to murder, as well as under No. 44354 containing one count charging possession of marihuana. He thereafter took an appeal to the Court of Special Appeals in which he raised several legal questions in an effort to overturn each of these judgments. That court, however, affirmed his convictions; Howell v. State, 18 Md. App. 429, 306 A. 2d 554 (1973), under each of the two separate indictments. We granted certiorari only in No. 44354, the marihuana case.

background events will be of assistance before we examine the particular facts relevant to the legal issue presented here.

According to Adrian Merryman's largely uncontroverted testimony, he returned to his Brooklandville home in the early afternoon of May 16, 1972 to find an intruder in the kitchen stealing his television set. Surprised by the homeowner's return, the intruder fled after abandoning the television and physically assaulting Mr. Merryman. Armed with the victim's photographic identification of Howell as his assailant, Corporal James Raymon of the Baltimore County Police obtained a warrant for the petitioner's arrest. Thereafter, a police teletype was sent out that requested the apprehension of Howell and which contained a description of the getaway car (a bluish-green Ford displaying Maryland license tag number LK 9218).

On the basis of this teletype, at approximately 12:50 p.m. on May 19, three Baltimore City detectives detained Howell and his motor vehicle in the parking lot of a fast food restaurant located on Reisterstown Road in Baltimore County, very near the city-county line. Corporal Raymon arrived at the scene by 1:10 p.m., a short time after two other county policemen had converged on the parking lot, and he immediately observed the petitioner leaning against the Ford. The corporal promptly served Howell with the arrest warrant and then placed a female who was seated in the front on the passenger side of the automobile under arrest.[2] A search of the vehicle ensued which led to the discovery, beneath the right front seat, of a pistol as well as a package containing marihuana, both of which were seized by the police.

At his trial, the petitioner moved, under the authority of *Mapp v. Ohio*, 367 U. S. 643, 81 S. Ct. 1684, 6 L.Ed.2d 1081 (1961), to suppress this seized marihuana and prohibit its use as evidence, arguing that it was the fruit of an unlawful search. The propriety of the denial by the trial judge of this

---

2. Unlike Howell, there was no outstanding warrant for this woman's arrest. The record in this case does not show any reason for her apprehension other than the fact that she was seated in the automobile.

motion was questioned by Howell in his appeal to the Court of Special Appeals, *Howell v. State*, 18 Md. App. 429, 306 A. 2d 554 (1973). That court took cognizance in its opinion of the fact that the accused was arrested in close proximity to his automobile and it correctly pointed out that in cases such as this a warrantless search of a motor vehicle is often permissible either under the "automobile exception," *Carroll v. United States*, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925) (see also the recent decision of this Court in *Mobley and King v. State*, 270 Md. 76, 310 A. 2d 803 (1973)); or as being a search incident to a lawful arrest, *Chimel v. California*, 395 U. S. 752, 89 S. Ct. 2034, 23 L.Ed.2d 685 (1969). Then, after examining the applicability of these two exceptions to the facts of this case, it concluded that while the record did not contain sufficient evidence to demonstrate the existence of probable cause to justify the search of the vehicle under the "automobile exception," *Coolidge v. New Hampshire*, 403 U. S. 443, 91 S. Ct. 2022, 29 L.Ed.2d 564 (1971); *Chambers v. Maroney*, 399 U. S. 42, 90 S. Ct. 1975, 26 L.Ed.2d 419 (1970), the seizure of the marihuana was proper as being within the dictates of *Chimel*.[3]

In overruling its previous decisions, such as *United States v. Rabinowitz*, 339 U. S. 56, 70 S. Ct. 430, 94 L. Ed. 653 (1950), the Supreme Court in *Chimel* ruled that the arrest of a defendant within his home did not authorize a meticulous search throughout the entire premises of a three-bedroom house (including the attic and garage) conducted without a search warrant and over the arrestee's objection. By the following language, that Court established a new limit for the permissible scope of a search incident to an arrest:

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in

---

**3.** In issuing the writ of certiorari in this case "limited to the question as to whether the marihuana was the fruit of an unconstitutional search and seizure" we inadvertently did not specify that we intended to consider only the "search incident exception" as we had recently discussed the "automobile exception" in Mobley and King v. State, 270 Md. 76, 310 A. 2d 803 (1973). Accordingly, we now further limit our review under the writ and will confine our discussion to the validity of the search as incident to a lawful arrest under Chimel v. California, 395 U. S. 752, 89 S. Ct. 2034, 23 L.Ed.2d 685 (1969).

order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control' — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." 395 U. S. at 762-63.

This principle has been at least implicitly reaffirmed in all of the subsequent decisions of the Supreme Court which have considered the question. *Gustafson v. Florida*, 414 U. S. 260, 94 S. Ct. 488, 38 L.Ed.2d 456 (1973); *United States v. Robinson*, 414 U. S. 218, 94 S. Ct. 467, 38 L.Ed.2d 427 (1973); *Cupp v. Murphy*, 412 U. S. 291, 93 S. Ct. 2000, 36 L.Ed.2d 900 (1973); *Adams v. Williams*, 407 U. S. 143, 92 S. Ct. 1921, 32 L.Ed.2d 612 (1972); *Coolidge v. New Hampshire*, 403 U. S. 443, 91 S. Ct. 2022, 29 L.Ed.2d 564 (1971); *Chambers v. Maroney*, 399 U. S. 42, 90 S. Ct. 1975, 26 L.Ed.2d 419 (1970); *Vale v. Louisiana*, 399 U. S. 30, 90 S. Ct. 1969, 26 L.Ed.2d 409 (1970). However, in none of these cases has that Court further delineated the boundaries of the "area into which an arrestee might reach"; nor has it addressed itself specifically to the scope of the search of an automobile when that search is conducted incident to the lawful arrest of its occupants. We conclude, after carefully considering the language used, that the test quoted above does not change simply because the arrestee is positioned in or near an

automobile. Though the actual scope of a valid search may vary with the vicissitudes of the conditions in existence at the arrest site, the policy which excuses the intrusion remains constant. Accordingly, the State, in order to justify its seizure of evidence under *Chimel*, must affirmatively show that a search of any place beyond the arrestee's person which was made contemporaneous to an arrest, including the space which encompasses a motor vehicle, was conducted within the area of the arrestee's immediate control as circumscribed by what is reasonably within his lunge, reach, or grasp. This conclusion appears to be in accord with the decisions rendered by other courts throughout the nation. A few examples will suffice to demonstrate this.

In *United States v. Day*, 331 F. Supp. 254 (E.D. Pa. 1971), the defendant was arrested while seated in his automobile and then placed in a police van to be taken to the station house. Subsequent to his removal, the motor vehicle in which he had been arrested was searched. Without discussing whether the search would have been proper had it been conducted while the defendant was still in the automobile, the United States District Court suppressed the evidence seized because " [c]ertainly [the defendant] could not [while in the police wagon] have reached below the seat of his car to grab a weapon or destroy evidence." *Id.* at 255-56.

As the appellant in *Commonwealth v. Ceravolo*, 224 Pa. Super. 464, 307 A. 2d 288 (1973), left the club in which he was employed and proceeded toward his automobile which was parked a short distance away, he was stopped by a law enforcement officer, escorted back to the club, and then served with an arrest warrant. Immediately following the arrest, the officer asked Ceravolo for the keys to his automobile, opened it, and discovered marihuana. The Superior Court of Pennsylvania held that the search of the vehicle was improper, reasoning that since " [a]ppellant was next to the building when the officer asked for his keys, and the automobile was locked ... [t]here is no reason to believe that [he] was in a position either to use anything in the automobile to endanger the officer ... or to destroy any evidence." 307 A. 2d at 289.

In *Madeley v. State*, 488 S.W.2d 416 (Ct. of Crim. App. Texas 1972), the court observed that one of those arrested was standing by the open door of the motor vehicle which was searched and as a result of this, items within the interior were well within their reach and properly received in evidence.

The Court of Special Appeals of Maryland has also considered cases in which the State relied on the *Chimel* doctrine to justify an automobile search. *Soles v. State*, 16 Md. App. 656, 299 A. 2d 502 (1973) (where the record reveals a search of a locked trunk and locked brief case found therein after the arrest of a suspect who was ordered to alight from his vehicle and give the keys to the arresting officer, evidence found should have been suppressed); *Peterson, Deal and Hunt v. State*, 15 Md. App. 478, 292 A. 2d 714 (1972) (where the record shows that "four arrestees are ordered from a vehicle and one braced against it for a search, where two others are being arrested several feet away, and where the doors of the vehicle are still open" a contemporaneous search of the interior was permissible). That court has interpreted *Chimel* to hold that the area within the arrestee's "immediate control" is not limited to the precise spot within his arms' length as he "may well lunge forward or move backward or to the side into an area in which he might grab a weapon or destroy evidence." *Scott v. State*, 7 Md. App. 505, 256 A. 2d 384 (1969). However, in citing these Maryland cases, as well as those from other jurisdictions, we are not indicating our approval or disapproval of the reasoning of those courts or the result reached by them. Instead, we are utilizing these authorities simply to show how other courts have applied the "search incident" doctrine and to demonstrate that the State must affirmatively establish that the evidence offered for admission was found either on the person of the arrestee or in a place so perilously close to him at the time of the arrest that had the discovered item been a weapon it might reasonably be employed by the person in custody to the detriment of the officer or had it been concealable or destructible evidence it would be readily susceptible to being

demolished by the arrestee. Whether reliance on this doctrine was appropriate in this case can be determined only by examining the testimony, exhibits, and documents which comprise the record. Therefore, it is to this task that we now direct our attention.

Corporal Raymon was the only witness at the trial who in any way undertook to describe the events which took place at the time of the petitioner's detention and the subsequent search of his automobile. This testimony was confined to what he observed after coming upon the scene. The trial court, therefore, had no information (and neither do we) as to what took place prior to the witness's arrival at the restaurant parking lot (other than that the petitioner was being detained by the Baltimore City police), though this crucial evidence undoubtedly could have been supplied had the State called at least one of the Baltimore City policemen who had originally apprehended Howell. Instead, we learn from Corporal Raymon only that a woman was seated on the front passenger side of the automobile, and the petitioner was under the control of the county and city police in the restaurant parking lot "leaning up against the car as if he had just priorly been searched" with "his hands . . . not in the air," when this officer arrived and served Howell with an arrest warrant and then proceeded to search the motor vehicle.[4] From this meager evidence, we have no idea where Howell was actually positioned and, therefore, what was within his lunge, his reach, or his grasp or, more importantly, whether the marihuana seized by the police was within this area. He could have been by the front door; however, it is just as likely that he was by the front or back fender, by the radiator or the trunk, or by the headlights or taillights. Additionally, we are not informed whether a window or door, if in fact one was within his reach, was open or closed, locked or unlocked. We are left in the dark as to where the police were standing and whether Howell was

---

4. The conclusion of the Court of Special Appeals that the marihuana found beneath the passenger seat was within the legitimate search perimeter was based on its determining that the evidence showed that Howell was standing unshackled and by the door. We cannot find support in the record for either of these determinations.

shackled or free to move about. Clearly, evidence that an arrestee was discovered leaning somewhere against the getaway car is simply not enough in and of itself to justify a warrantless search of a motor vehicle which was made incident to a lawful arrest under the *Chimel* doctrine. In addition, the record does not disclose when or where the arrest took place or by whom, the first step in detecting what was incident to it. In passing upon issues which are of constitutional dimension, a court can neither fill gaps in the record with conjecture nor substitute surmise for positive proof. Consequently, care should be taken by the State in presenting its case to insure that there will be sufficient evidence, if any exists, placed in the record to justify the execution of a warrantless search incident to a lawful arrest. We do not mean to imply that all or any one of the details mentioned as being absent here must be specifically accounted for in every case. No list can be formulated by this or any other court which would account for the uniqueness of each case and we are not attempting to accomplish this task here. However, what we do require is that the State meet its burden of showing on the record that the items seized incident to a lawful arrest without a search warrant, and offered into evidence, were obtained in accordance with the dictates of *Chimel*. Such was not accomplished here.

> *Judgment of the Court of Special Appeals and the Circuit Court for Baltimore County in Indictment No. 44354 reversed and the case remanded for a new trial.*
>
> *Costs to be paid by the County Council of Baltimore County.*