**Thomas RICKS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2377.**

Court of Appeals of Alaska.

April 14, 1989.

Marcia E. Holland, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

Tonja J. Woelber, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

BRYNER, Chief Judge.

Thomas Ricks was convicted, following a jury trial, of four counts of misconduct involving a controlled substance in the third degree and one count of misconduct involving a controlled substance in the fourth degree. On appeal, Ricks challenges only one of his convictions: with respect to the count of misconduct involving a controlled substance in the fourth degree, Ricks contends that the superior court erred in denying his motion to suppress evidence. We reverse.

The relevant facts are not disputed. On April 22, 1987, Alaska State Troopers, working through an undercover informant, made arrangements to purchase drugs from Ricks in Delta Junction at the Buffalo Bar, where Ricks was employed as a bartender. The troopers secured a warrant to record the transaction electronically. In addition to the informant, three undercover officers were stationed inside the bar during the sale. Three additional officers remained outside and monitored the transaction.

Ricks initially met with the undercover informant at the bar. Ricks then obtained some drugs from the pocket of his jacket, which was hanging on a coat rack near the bar, and delivered the drugs to the informant.

As the informant left the bar upon completion of the sale, the officers stationed outside entered. Ricks was behind the bar. Two officers immediately arrested Ricks, moved him away from the bar to the back of the saloon, and searched him for weapons and drugs. The other officers secured the premises and kept watch on the patrons in the bar—about nine or ten people.

Approximately fifteen minutes after the arrest, while Ricks was still being held at the back of the saloon, an officer retrieved Ricks' jacket from the coat rack and asked Ricks if it was his. When Ricks said that the jacket was his, the officer searched its pockets and found a quantity of methamphetamines.

Ricks was subsequently charged in a seven-count indictment. Count VII, alleging misconduct involving a controlled substance in the fourth degree, was based on Ricks' possession of the methamphetamines found in his jacket pocket. Ricks moved to suppress this evidence, arguing that the warrantless search of his jacket amounted to a violation of his constitutional right to protection against unreasonable searches and seizures.

An evidentiary hearing on Ricks' suppression motion was held before Superior Court Judge Richard D. Savell. At the hearing, the state sought to establish that the warrantless search of the jacket was justified as a search incident to Ricks' arrest. At the conclusion of the evidentiary hearing, Judge Savell found that when police entered the Buffalo Bar and arrested Ricks, "Mr. Ricks was at least ten to fifteen feet from the jacket, the jacket was not accessible to him, and at no time after that was it accessible.... [B]ecause of that, and the ... subsequent actions of all the persons involved, there was no risk of destruction."

Despite this finding, Judge Savell went on to conclude that "it doesn't matter whether the jacket was in the immediate presence and control of the defendant when the search was commenced." In Judge Savell's view, the jacket was "property immediately associated with" Ricks because it was an article of clothing belonging to him and because he had had access to it shortly before his arrest. Relying primarily on this court's decision in *Dunn v. State*, 653 P.2d 1071, 1079–82 (Alaska App.1982), Judge Savell ruled that, as property immediately associated with Ricks' person, the jacket could be subjected to a warrantless search incident to Ricks' arrest even though it was not in his immediate physical presence or control when the arrest occurred:

> For those narrow reasons, the court is going to deny the motion, but hopes that the findings make it clear that it is based strictly on the horns of a dilemma, and

makes—makes the ruling on the narrow basis that the jacket was an item, as the case law describes, as immediately associated with him. An article of personal property immediately associated with him. It was under his immediate control prior to the entry of the police, and, therefore, could have contained the evidence which is permitted and associated with the arrest. It, clearly, was not under his immediate control from that point forward, and the court thus finds it didn't have to be at the time of the actual, guns-drawn arrest. And, with that narrow—I hope that is a narrowly defined ruling to guide the parties. The court denies the motion.

On appeal, the state does not challenge the superior court's factual determination that Ricks' jacket was not in his immediate presence or control at the time of his arrest. Instead, the state urges us to uphold the court's finding that the jacket could be subjected to a warrantless search as property immediately associated with Ricks' person. In our view, however, the state's argument is based on a misinterpretation of our decision in *Dunn v. State.*

As we pointed out in *Dunn,* the exception to the warrant requirement for searches incident to arrest is founded on the exigencies inherent in an arrest situation: the need to assure the personal safety of the arresting officers and the need to prevent the defendant from destroying evidence. These exigencies limit the scope of the exception to the area within the immediate physical control of the defendant at the time of the arrest:

A warrantless search incident to a lawful arrest is permitted to assure the safety of arresting officers and to avoid the possible destruction of evidence by the accused. *See, e.g., Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed. 2d 685 (1969). These dual policies justifying an exception to the warrant requirement for a search incident to arrest also serve to limit the scope of the warrantless search that can properly be conducted. *Id. See also McCoy v. State,* 491 P.2d 127, 132 (Alaska 1971). Thus, a warrantless search incident to arrest will normally be limited to the person arrested and the area within his immediate physical control. *McCoy,* 491 P.2d at 132.

*Dunn v. State,* 653 P.2d at 1079–80.

We went on to acknowledge in *Dunn* that the search incident to arrest exception is flexible. 653 P.2d at 1080. However, our discussion of flexibility referred not to the primary requirement that the search be restricted to "the person arrested and the area within his immediate physical control," but rather to the time and circumstances under which warrantless searches incident to arrest may be conducted. Thus, in pointing out the need for flexibility, we specifically cited *McCoy v. State,* 491 P.2d 127, 133 (Alaska 1971), for the proposition that, while the dual exigencies justifying searches incident to arrest limit the physical area in which a search may be conducted, they do not necessarily limit the time and circumstances in which the warrantless search may be conducted. *Dunn v. State,* 653 P.2d at 1080 n. 4.

*Dunn* involved the warrantless search of a paper bag found in the pocket of the defendant's jacket shortly after his arrest. The jacket had been placed next to the seat of the van that the defendant was riding in when arrested. At the time the jacket was seized and searched, the defendant had already been arrested and removed from the van. He was held in restraints well away from the van's passenger compartment, and no exigency existed. On appeal, the defendant argued that the lack of exigency at the time the search was commenced rendered the search incident to arrest exception inapplicable.

Relying on *McCoy,* as well as on the Alaska Supreme Court's subsequent decision in *Hinkel v. Anchorage,* 618 P.2d 1069 (Alaska 1980), we rejected this argument, emphasizing that the exigencies governing a search incident to arrest must be viewed as of the time of the arrest, rather than as

of the time the item is opened. *Dunn v. State,* 653 P.2d at 1080. Thus, we did not find the lack of exigency at the time the search was commenced to be controlling:

> We perceive virtually no distinction between Dunn's placement of his jacket next to his left leg and the placement of a jacket over the back of a chair, as occurred in *McCoy.* In both instances, articles of personal clothing were involved, and they were in the immediate control of the arrestee at the time of the arrest. We do not think it significant that Dunn was being placed under arrest at the rear of the van when his jacket was actually seized and searched. The circumstances are, in this respect, closely analogous to those of *Hinkel.* As in *Hinkel,* the exigencies of the search in this case must be determined with reference to the time that Dunn was initially ordered from the van to be taken into custody. *As long as the jacket was in Dunn's immediate control* as he sat in Shelton's van, it is not important that the jacket and its contents were first searched after Dunn was in custody and could not have gained access to the jacket.

*Dunn,* 653 P.2d at 1082–83 (emphasis added).

As this passage makes clear, nothing in *Dunn* was meant to suggest that the search incident to arrest exception can properly be applied to articles outside the immediate reach of the defendant at the time of the defendant's arrest. *Dunn, McCoy,* and *Hinkel* all involved searches of articles that were worn by or were in the immediate physical control of the defendant at the time of the arrest. Far from suggesting that the scope of a warrantless search incident to arrest may be extended beyond the limits of a defendant's immediate physical control, these decisions all support the conclusion that physical proximity at the time of the arrest—with the consequent threat to safety and risk of destruction—is the basic requirement upon which the search incident to arrest exception is predicated.

The specific language from *Dunn* relied on by the superior court in this case, while admittedly potentially confusing, does not warrant a contrary conclusion. In *Dunn,* we said, in relevant part:

> The rule that emerges from the case law and that must govern the disposition of this case may be restated as follows: upon the lawful, non-pretextual arrest of an individual for a crime, evidence of which could be concealed on the person ... the arrestee's person, his clothing and articles which, akin to clothing, are immediately associated with the person of the arrestee may be searched at the time of the arrest, or within a reasonable period thereafter. As long as the search is confined within these limits, it is permissible for officers to open and inspect the contents of any closed containers found, unless, under the circumstances, it could not reasonably be believed that the container would yield a weapon or evidence of the crime for which the arrest was made.

*Dunn,* 653 P.2d at 1082.

It is important to understand the context in which *Dunn*'s reference to "articles ... immediately associated with the person of the arrestee," was made. As we have already observed, in *Dunn* we relied on *McCoy* and *Hinkel* to reject the contention that a search incident to arrest must be justified by exigency existing at the time the search is commenced; we emphasized that the exigencies must instead be viewed at the time of the arrest. *See Dunn,* 653 P.2d at 1080. In connection with this point, we found it necessary to address a line of potentially conflicting Alaska cases in which warrantless searches of certain containers seized incident to arrest had been held invalid:

> There is apparent tension between the line of cases that follow the Supreme Court's ruling in *McCoy* and other cases in which warrantless searches of closed containers *seized from the defendant's immediate proximity at the time of his arrest* have been found invalid. For ex-

ample, in *Metcalfe v. State*, 593 P.2d 638 (Alaska 1979), a closed box was being placed by the defendant in the trunk of a car when he was arrested. The box was seized, transported to the station and searched without a warrant; the search disclosed a large quantity of marijuana.... [T]he Alaska Supreme Court held that the contents of the box should have been suppressed.

*Dunn*, 653 P.2d at 1081 (emphasis added).

This passage makes it clear that the potentially conflicting cases we discussed in *Dunn* were all cases involving the seizure of articles within the immediate proximity of the defendant at the time of the arrest. The ensuing discussion in *Dunn*, which includes our reference to "articles ... immediately associated with the person of the arrestee," was thus meant to point out that the search incident to arrest exception will not justify the warrantless search of all closed containers found within the immediate proximity of the defendant upon arrest. While the seizure of an article from the immediate proximity of the defendant is a necessary part of the search incident to arrest exception, proximity alone is not sufficient. The article must be one that is "immediately associated with the person of the arrestee," as were the purse in *Hinkel* and the jackets in *McCoy* and *Dunn*.

█ In the present case, Ricks' jacket would certainly have qualified under *Dunn, Hinkel,* and *McCoy* as the type of article immediately associated with Ricks' person that could have been searched had it been in Ricks' immediate presence at the time of his arrest. As the trial court expressly found, however, when the police

entered the Buffalo Bar to arrest Ricks, "Ricks was at least ten to fifteen feet from the jacket, the jacket was not accessible to him, and at no time after that was it accessible." As the court further found, "there was no risk of destruction." These findings make it clear that, even when viewed at the time of Ricks' arrest, the exigencies of the situation did not require a search of Ricks' jacket. Under the circumstances, the dual policies of assuring safety and preventing destruction of evidence that underlie the search incident to arrest exception cannot justify the warrantless search.

The cases cited by the state on appeal do not point to a different conclusion.[1] None of these cases hold or suggest that an article may be subjected to a warrantless search incident to arrest when it is outside the defendant's immediate reach at the time of arrest. Of course, apart from the search incident to arrest exception, the police had probable cause to believe that Ricks' jacket contained contraband. This fact, coupled with the risk that evidence in the jacket might have been destroyed had it been left unattended at the bar after the police departed, certainly would have justified immediate seizure of the jacket pending an application for a warrant. We conclude, however, that a warrantless search was not justified by the search incident to arrest exception.

█ The state alternatively argues that there is an independent legal basis for upholding the superior court's ruling. According to the state, the troopers were justified in searching Ricks' jacket as a precautionary measure before returning it to him so that he could wear it while being

---

1. *See, e.g., United States v. Wysocki,* 457 F.2d 1155 (5th Cir.1972) (search of a gun box in a closet within six feet of the defendant was approved when the defendant was known to have dangerous propensities and requested officers to get clothing for him from the closet); *United States v. Bradley,* 455 F.2d 1181 (1st Cir.1972), *aff'd,* 410 U.S. 605, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973) (approving search of a flight bag thrown into a separate room by the defendant upon his arrest); *State v. Parker,* 315 N.C. 222, 337 S.E.2d 487 (1985) (approving search when the defen-

dant was three or four feet from his jacket and made a motion towards it); *Collins v. Commonwealth,* 574 S.W.2d 296 (Ky.1978) (approving seizure of a gun enclosed within an air conditioner when the defendant was four to seven feet from the air conditioner at the time of his arrest); *State v. Cherry,* 298 N.C. 86, 257 S.E.2d 551 (1979) (upholding a search under a rug in a room approximately nine feet by twelve feet when a bulge in the rug appeared to be a gun and the entire room was in the immediate control of the defendant).

transported to jail. In support of this rationale, the state points to the testimony of Trooper Franco D'Angelo, who seized and searched Ricks' jacket. D'Angelo testified that he would have given the jacket to Ricks had it not been found to have drugs in its pockets. The state cites numerous cases from other jurisdictions that have approved post-arrest searches of articles of clothing that were not in the defendant's immediate presence at the time of arrest.[2]

The cases relied on by the state, however, appear to involve either defendants who made post-arrest requests for arresting officers to obtain specific articles of clothing or defendants who were arrested while only partially clothed, making it reasonable and necessary for arresting officers to secure additional clothing. In the present case, the superior court was never asked to consider whether it was necessary for Ricks to be provided with his jacket before being transported to jail. Ricks did not ask for his jacket, and the state made no factual showing below that the jacket would have been necessary or desirable.

Moreover, Trooper D'Angelo testified only that, but for the drugs, he would have given the jacket to Ricks. Nothing in the trooper's testimony indicates that the trooper believed it necessary for Ricks to have the jacket or to wear it while being transported to jail. Nor is there anything in the record to establish why such a belief, if held by D'Angelo, would have been reasonable. The jacket was apparently not returned after it was searched, and the record contains no indication that the troopers found it necessary to provide Ricks with a replacement for the jacket before transporting him to jail.

Had it been necessary to clothe Ricks in order to transport him, it is arguable that the troopers could properly have secured clothing for him and subjected that clothing to a search before placing it in his possession. On the other hand, however, the troopers certainly did not become entitled to engage in a warrantless search simply by going out of their way to create an exigency. The record in this case is inconclusive on the issue of whether Trooper D'Angelo reasonably believed it necessary for Ricks to wear his jacket. The state's failure to raise this theory below precluded the trial court from addressing it. Under the circumstances, we hold that the factual record fails to support the state's alternative legal theory. *See, e.g., United States v. Whitten,* 706 F.2d 1000 (9th Cir.1983); *United States v. Anthon,* 648 F.2d 669 (10th Cir.1981); *State v. Robalewski,* 418 A.2d 817 (R.I.1980).[3]

Accordingly, we conclude that the superior court erred in denying Ricks' suppres-

2. *See, e.g., Giacalone v. Lucas,* 445 F.2d 1238 (6th Cir.1971) (seizure of blackjack discovered when defendant opened drawer to get clothing upheld); *United States v. Manarite,* 314 F.Supp. 607 (S.D.N.Y.1970), *aff'd,* 448 F.2d 583 (2d Cir.1971) (following arrest, defendant requested officers to obtain a dress and raincoat from her closet; court upheld seizure of incriminating evidence found in closet); *Parker v. Swenson,* 332 F.Supp. 1225 (E.D.Mo.1971), *aff'd,* 459 F.2d 164 (8th Cir.1972) (defendant was allowed to collect his personal effects from a locker following arrest; seizure of incriminating evidence from locker upheld); *State v. Johnson,* 306 So. 2d 724 (La.1975) (defendant arrested in his underwear and led to his bedroom to get dressed; court approved police conduct in searching trousers before giving them to defendant).

3. The state also contends that use of the evidence taken from Ricks' jacket can independently be justified under the inevitable discovery doctrine. *See Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). According to the state, an inventory of Ricks' jacket would have been performed once he got to a place of detention, and the inventory would have disclosed the contents of the jacket.

We know of no Alaska cases invoking the inevitable discovery doctrine to justify the use of illegally seized evidence. Even assuming we were inclined to adopt the inevitable discovery doctrine, it would be inapplicable in the present case. Under the doctrine, it is incumbent on the state to establish, by a preponderance of the evidence, that discovery of the challenged evidence was inevitable: not that it might have been found but that it would have been found. *Nix v. Williams,* 467 U.S. at 444, 104 S.Ct. at 2509; 4 W.R. LaFave, Search and Seizure § 11.4(a) at 383–88 (2d ed. 1987).

In the present case, it is certainly conceivable that an inventory search might lawfully have been conducted and that it might have disclosed the contents of Ricks' jacket. *See Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). *Cf. Zehrung v. State,* 569

sion motion. Because it is undisputed that Ricks' conviction on Count VII was based on evidence seized from his jacket, the conviction must be REVERSED.

SINGLETON, J., dissents.

SINGLETON, Judge, dissenting.

Having carefully reviewed the record in this case, I believe that the search of Ricks' jacket was justified for two reasons. First, I am convinced that Ricks' jacket was properly searched incident to his arrest. Second, the jacket itself is independent evidence of crime because eyewitness testimony established that Ricks obtained drugs from the jacket preparatory to selling them to the confidential informant. Under the circumstances, the jacket could have been seized and searched even if Ricks had avoided arrest. I therefore dissent from the decision to reverse.

In deciding whether the search in this case was a valid search incident to arrest, we must make three determinations. First, was Ricks' jacket within his "immediate control" at the time the police officers burst into the bar with guns drawn? *See Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). Second, was the jacket in question "immediately associated with the person of [Ricks] to [his] exclusive control"? *United States v. Chadwick,* 433 U.S. 1, 15, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538 (1977). Third, if the jacket was personal property immediately associated with Ricks, does that fact "except[ ] [the jacket] ... from the requirement that an exigency must exist to justify a search[,]" *Hinkel v. Anchorage,* 618 P.2d 1069, 1071 (Alaska 1980), *i.e.,* that the jacket be within Ricks' immediate control and

therefore be a possible source for a weapon or for evidence that he could destroy.

I understand Judge Savell to say that, as a matter of fact, the coat was within Ricks' immediate control in the seconds preceding the armed officers' abrupt entry into the bar, but that the officers pointed their guns at Ricks and, in effect, froze him in place so that he could not get to the jacket. I would hold that Judge Savell's conclusion that the jacket was available to Ricks in the seconds preceding his confrontation with the officers satisfies the immediate control requirement. It appears that Judge Savell's gloss on this finding constituted a misperception of the legal rules. *See New York v. Belton,* 453 U.S. 454, 457–60, 101 S.Ct. 2860, 2862–64, 69 L.Ed.2d 768 (1981); *Chimel,* 395 U.S. at 763, 89 S.Ct. at 2040; *Uptegraft v. State,* 621 P.2d 5, 9–10 & n. 13 (Alaska 1980); *Hinkel,* 618 P.2d at 1070–73; *Brown v. State,* 580 P.2d 1174, 1176 (Alaska 1978); *Middleton v. State,* 577 P.2d 1050, 1055 (Alaska 1978); *Daygee v. State,* 514 P.2d 1159, 1162–66 (Alaska 1973); *McCoy v. State,* 491 P.2d 127, 138–39 (Alaska 1971); *Merrill v. State,* 423 P.2d 686, 700 (Alaska 1967); *Jackson v. State,* 657 P.2d 405, 406–07 (Alaska App.1983); *Dunn v. State,* 653 P.2d 1071, 1079–83 (Alaska App.1982). *See also* 2 W. LaFave, *Search and Seizure,* §§ 5.5, 6.3(c) (2d ed. 1987); 3 W. Lafave, *Search and Seizure,* § 7.1 (2d ed. 1987).

Even if Judge Savell's conclusions were not ambiguous and he found that the jacket was not within Ricks' immediate control after the officers had drawn their guns, I would hold that this finding is clearly mistaken.

A number of factors lead me to this conclusion.[1] A warrantless search incident

---

P.2d 189 (Alaska 1977), *modified on rehearing,* 573 P.2d 858 (1978). However, the record in this case is devoid of any evidentiary showing that an inventory search of Ricks' jacket would in fact have been conducted had the jacket not been searched at the scene of the arrest. The state in effect asks us to assume that such searches are inevitable. In our view, the state has failed to meet its burden of proof with respect to the inevitable discovery doctrine.

*Compare United States v. Allen,* 436 A.2d 1303 (D.C.App.1981) *with United States v. Andrade,* 784 F.2d 1431 (9th Cir.1986). *See also State v. Badgett,* 200 Conn. 412, 512 A.2d 160 (1986).

1. In order to better understand the factual assumptions in this dissent, it is helpful to look at defendant's exhibit A, a diagram of the Buffalo Bar showing the respective positions of Ricks, the bar, the cigarette machine, the cooler, and

to arrest must be confined to the defendant's person or "the area from which [he] might obtain weapons or evidentiary items." *Chimel*, 395 U.S. at 766, 89 S.Ct. at 2041. A search incident to a lawful arrest must be limited to the area where the arrest occurred. It may not be conducted somewhere "remote in time or place from the arrest." *Id.* at 764, 89 S.Ct. at 2040 (quoting *Preston v. United States*, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964)). The area which may be searched encompasses any place within the defendant's "lunge, reach, or grasp." *See State v. LeBlanc*, 347 A.2d 590, 595 (Me.1975) (quoting *Howell v. State*, 271 Md. 378, 318 A.2d 189, 192 (1974)). It is the risk, not the probability or likelihood, that the defendant, if so motivated, could reach the item which is determinative of the area within the arrested person's control. An item is within an arrestee's immediate control unless there is no significant risk that the arrestee or his confederates "might gain possession of a weapon or destructible evidence." *Chimel*, 395 U.S. at 763, 89 S.Ct. at 2040. Thus, it is the risk of the defendant's conduct, not the likelihood, which determines his area of control. *See Uptegraft*, 621 P.2d at 10 (upholding a search incident to arrest even though "it is possible to speculate that there was [only] a small likelihood that one of the suspects would have been able to leap into the car to obtain a weapon.")

the coat rack. I have attached a copy of that exhibit as an addendum to this dissenting opinion. This drawing is not to scale and may exaggerate the distances involved. The photographs introduced in evidence are of poor quality. Nevertheless, they appear to indicate that the distance from the end of the bar to the cigarette machine was very short. On the diagram, Ricks' position, behind the bar, is marked "1" and the coat rack is shown as parallel lines at the end of the bar between the cooler and the cigarette machine (marked "cig"). According to Officer D'Angelo's testimony, Ricks was ten feet or less from the coat rack, behind the bar, at the time the police entered the room. Ricks testified that he was approximately fifteen or twenty feet from the coat rack at that time. The trial court did not resolve this dispute in the evidence, beyond finding that Ricks was ten to fifteen feet from the coat rack, apparently in the belief that it would not have mattered where Ricks was with respect to the coat rack once he had loaded handguns pointed at his face.

A number of factors lead me to the conclusion that as a matter of law there was a significant risk that Ricks could have reached his jacket had he been motivated to do so despite the officers' drawn guns. First, Ricks was not placed in restraint. Second, at the time of the initial confrontation, Ricks was behind the bar. It does not appear that any of the arresting officers were positioned in such a way that they were between him and the coat rack, which was virtually at the end of the bar. Third, the evidence in question was in the pockets of the jacket, readily accessible to anyone holding the jacket. Finally, six officers were attempting to control eleven people— Ricks and ten patrons of the bar. All of these reasons militate in favor of a finding that the jacket was within Ricks' immediate control. *See* 2 W. LaFave, *supra*, § 6.3(c), at 630–31.

Although the question in Ricks' case is much closer than that in *Hinkel*, it seems to me that *Hinkel* also supports Judge Savell's conclusion that Alaska law excepts, for purposes of search incident to an arrest, items immediately associated with the person of the defendant from the requirement that they be within his immediate control at the time of the search. *Hinkel*, 618 P.2d at 1071.[2] Reading *Hinkel* and *McCoy* together, it seems to me that the supreme court is saying that the police

2. The majority's suggestion that access at the moment of arrest validates a search conducted at a later time, after all exigencies have disappeared, is problematical. The supreme court does not specifically say this in either *McCoy* or *Hinkel*, although we intimated it in *Dunn*. The only case in which the supreme court specifically held that exigencies at the time of an arrest justify a later search, after the exigencies have disappeared, is *Daygee*, 514 P.2d at 1165–66. However, the supreme court criticized this holding in a decision reached subsequent to *Hinkel*. *See Uptegraft*, 621 P.2d at 10 n. 13. The fact that the court in *Uptegraft* does not mention *Hinkel* suggests that it understands the holding of that case to rest on other grounds. *See New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (reaching the same result as *Daygee* on slightly different grounds).

have the right to search the person of a suspect incident to his or her custodial arrest, and that this right to search narrows *pro tanto* the suspect's reasonable expectations of privacy. Because the supreme court views items immediately associated with a person, such as clothing, purses, and wallets, as extensions of the person, it necessarily follows that this reduced expectation of privacy attaches to these items as well. The reduced expectation of privacy would not extend to boxes, whether locked or unlocked or luggage, not so immediately associated with the person, to which greater reasonable expectations of privacy might be presumed to exist. This interpretation of *Hinkel, McCoy, Dunn,* and *Jackson* provides additional support for the search in this case.[3]

Apart from this search being justified as a search incident to arrest, I also believe that the jacket could have been seized as independent evidence of crime. I do not find persuasive the majority's suggestion that the jacket could have been impounded and taken to the police station where it

could have been searched after a search warrant was obtained. In my view, the right to seize the jacket as independent evidence was clear, and an immediate inventory of its contents was necessary. This was so in order to prevent Ricks from later claiming, either accurately or inaccurately, that something of value had been taken from the jacket. It was also necessary, in my view, in a case where the police had probable cause to believe that the jacket contained contraband, to prevent Ricks from later claiming, truthfully or falsely, that the police planted contraband in the jacket. While an immediate inventory would not rule out these possibilities absolutely, it would certainly limit the risk. Ricks was the subject of a custodial arrest in a public place at a time when his jacket was ten to fifteen feet away; therefore, the need for an immediate inventory justifies the search of the jacket.[4]

I therefore dissent from the decision to reverse the order denying suppression in this case.

---

**3.** The rule distinguishing items immediately associated with the person from other items in the vicinity is derived from *Chadwick,* 433 U.S. at 14–15, 97 S.Ct. at 2485–2486. However, *Chadwick* was not primarily a search incident to arrest case. *See Belton,* 453 U.S. at 461–62, 101 S.Ct. at 2864–65.

**4.** The jacket was hanging in plain view. An undercover officer observed Ricks taking drugs out of the jacket for sale to the informer. Thus the jacket was independent evidence warranting its seizure. As discussed, the justifications for

an immediate inventory apply here. In addition, an immediate search might disclose that the officer was in error, *i.e.,* that the drugs actually came from somewhere else, perhaps from behind the adjacent cooler or cigarette machine. Bearing in mind that the jacket was in a public place, immediate assurance that the source of drugs was established would permit the officers to leave the bar without fear that Ricks' confederates might recover the drugs at a later time.

ATTACHMENT TO JKS' DISSENTING OPINION
Ricks v. State, A-2377[AOB]