**STATE of Alaska, Petitioner,**

v.

**Thomas RICKS, Respondent.**

No. S–3345.

Supreme Court of Alaska.

July 26, 1991.

Marcia E. Holland, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for respondent.

Tonja J. Woelber, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for petitioner.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

ORDER

IT IS ORDERED:

1. The opinion of the court of appeals in *Ricks v. State*, 771 P.2d 1364 (Alaska App. 1989), is vacated.

2. The decision of the court of appeals reversing Ricks' conviction on Count VII of the indictment is affirmed for the reasons, as expressed by the court of appeals, which follow:

> As the trial court expressly found, ... when the police entered the Buffalo Bar to arrest Ricks, "Ricks was at least ten to fifteen feet from the jacket, the jacket was not accessible to him, and at no time after that was it accessible." As the court further found, "there was no risk of destruction." These findings make it clear that, even when viewed at the time of Ricks' arrest, the exigencies of the situation did not require a search of Ricks' jacket. Under the circumstances, the dual policies of assuring safety and preventing destruction of evidence that underlie the search incident to arrest exception cannot justify the warrantless search.
>
> The cases cited by the state on appeal do not point to a different conclusion. None of these cases hold or suggest that an article may be subjected to a warrantless search incident to arrest when it is outside the defendant's immediate reach at the time of arrest. Of course, apart from the search incident to arrest exception, the police had probable cause to believe that Ricks' jacket contained contraband. This fact, coupled with the risk that evidence in the jacket might have been destroyed had it been left unattended at the bar after the police departed, certainly would have justified immediate seizure of the jacket pending an application for a warrant. We conclude, however, that a warrantless search was not justified by the search incident to arrest exception.

*Ricks*, 771 P.2d at 1368 (footnote omitted).

Entered by direction of the court at Anchorage, Alaska on July 26, 1991.

MOORE, Justice, concurring. See attached concurrence.

MOORE, Justice, concurring.

Thomas Ricks was convicted of five counts of misconduct involving a controlled substance. He appeals one of these counts on the ground that the superior court, Judge Richard D. Savell, erroneously denied his motion to suppress evidence obtained in a warrantless search at the time of his arrest. The court of appeals held that the warrantless search was unlawful and reversed. The state petitioned for hearing. We have affirmed the court's ruling but vacated its written opinion. While I concur with the court's decision, I write separately to more fully analyze the constitutional right at issue in this case.

## I.

Thomas Ricks was employed as a bartender at the Buffalo Bar in Delta Junction. Based upon Ricks' sale of drugs to an informant on March 18, 1987, the Alaska State Troopers obtained a warrant for Ricks' arrest. They arranged for another sale to the informant on April 22, 1987. Three undercover officers were inside the Buffalo Bar to observe the sale and three additional officers were waiting outside.

Ricks obtained drugs from his jacket, which was hanging on a coat rack in a corner near the end of the bar, and sold them to the informant. When the informant left the establishment, the officers waiting outside entered with their guns drawn and instructed everyone inside to freeze. Ricks was standing behind the bar near its midpoint. Ricks' jacket was still hanging near the end of the bar. Ricks was ten to fifteen feet from his jacket. Four of the officers took control of the ten patrons while two of the officers arrested Ricks.

The two officers walked to the end of the bar and instructed Ricks to step out from behind the bar. At this time, the officers were between Ricks and his jacket. The officers then escorted Ricks to the pool table in the back of the Buffalo Bar. The pool table was approximately twenty-five feet from the jacket. Although Ricks' path to the pool table passed quite close to his jacket, neither Ricks nor anybody else ever attempted to reach the jacket.

The officers told Ricks that he was under arrest. Approximately fifteen minutes later, one of the officers informed the arresting officer that Ricks removed the drugs he sold to the informant from his jacket. While one officer stayed with Ricks, two officers retrieved the jacket and brought it to the pool table, where Ricks identified the jacket as his own. The officers searched the jacket to determine whether it contained a weapon or drugs. They did not attempt to obtain a search warrant for the jacket prior to their search. The arresting officer testified that if the jacket contained neither, he would have given it to Ricks to wear.[1] The search revealed drugs of the types sold to the informant and an additional drug, methamphetamine.

Ricks was indicted on seven counts of misconduct involving a controlled substance, including Count VII, possession of methamphetamine in violation of AS 11.71.-040(a). He moved to suppress the evidence discovered during the search of his jacket. The superior court denied Ricks' motion, explaining that even though the jacket was not "under his immediate control," it was "immediately associated with the person." After a trial during which the methamphetamine found in the jacket was admitted into evidence, a jury found Ricks guilty of five counts including Count VII. The court entered a judgment of conviction in accordance with the verdict. Ricks only appealed his conviction on Count VII. The court of appeals reversed. *Ricks v. State*, 771 P.2d 1364 (Alaska App.1989). It reasoned that, since the jacket was not in Ricks' immediate control and it was not necessary to provide Ricks with his jacket, a warrantless search of the jacket was not justified. 771 P.2d at 1368.

## II.

The fourth amendment of the United States Constitution protects "[t]he right of

---

1. Although the wind chill at the time and place of arrest was 38 degrees Fahrenheit, Ricks neither requested his jacket nor consented to its search. It would have been necessary to release Ricks from his handcuffs to allow him to wear the jacket.

the people to be secure ... against unreasonable searches and seizures." "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (footnote omitted). These exceptions "have been jealously and carefully drawn."[2] *Jones v. United States*, 357 U.S. 493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958).

The warrant requirement is not a mere formality, but rather a fundamental constitutional protection reflecting "our basic constitutional doctrine that individual freedoms will best be preserved through a separation of powers and division of functions among the different branches and levels of Government." *United States v. United States District Court*, 407 U.S. 297, 317, 92 S.Ct. 2125, 2137, 32 L.Ed.2d 752 (1972). Specifically, the warrant requirement operates "to check the 'well-intentioned but mistakenly over-zealous executive officers' who are a part of any system of law enforcement." *Coolidge v. New Hampshire*, 403 U.S. 443, 481, 91 S.Ct. 2022, 2046, 29 L.Ed.2d 564 (1971) (quoting *Gouled v. United States*, 255 U.S. 298, 304, 41 S.Ct. 261, 263, 65 L.Ed. 647 (1921)). It does so "[b]y requiring that conclusions concerning probable cause and the scope of a search 'be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'" *Arkansas v. Sanders*, 442 U.S. 753, 759, 99 S.Ct. 2586, 2590, 61 L.Ed.2d 235 (1979) (quoting *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948)).

These same principles guide the interpretation of the search and seizure provision of article I, section 14 of the Alaska Constitution. *E.g.*, *State v. Daniel*, 589 P.2d 408, 416 (Alaska 1979); *Erickson v. State*, 507 P.2d 508, 514 (Alaska 1973). This court has held that article I, section 14, especially when read together with the right to privacy provision of article I, section 22, provides broader protection than the fourth amendment to the United States Constitution. *Woods & Rohde, Inc. v. State*, 565 P.2d 138, 150 (Alaska 1977); *see State v. Glass*, 583 P.2d 872, 874–75 (Alaska 1978).

One exception to the warrant requirement exists for searches incident to a lawful arrest. *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In crafting this exception, it is necessary to balance the need for a warrantless search, for example to reduce the danger to police or the risk of loss of evidence, against the reasons for prior recourse to a neutral magistrate and the invasion of privacy resulting from the search. *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990); *Sanders*, 442 U.S. at 759, 99 S.Ct. at 2590; *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). A search incident to arrest is a significant intrusion. In *Terry*, the Supreme Court recognized that "[e]ven a limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security...." 392 U.S. at 24–25, 88 S.Ct. at 1881–1882. A search incident to arrest, which may incorporate such a search of outer clothing, is at least as intrusive.

Given this degree of intrusion, I believe that a search incident to arrest can be justified only by the dual rationales described by the Supreme Court in *Chimel v. California*. That is, the warrantless search of an arrestee and the area within his immediate control, incident to arrest, is justified in order to protect the arresting officers' need to find weapons that the

---

**2.** The state argued that a search should be upheld if it "fit[s] into more than one of the categories of valid warrantless searches." This is most certainly true. Searches allowed under a multiplicity of exceptions to the warrant requirement are just as valid as those allowed under only one exception. The state aptly cites numerous cases upholding searches on alternative grounds. However, the state also implies that searches that almost fit within a couple of exceptions but are not quite lawful under any one exception should be upheld. This implication is emphatically wrong. To be valid, a warrantless search must fall squarely within at least one exception to the warrant requirement.

arrestee might use to resist arrest or escape and to prevent the concealment or destruction of evidence. 395 U.S. at 763, 89 S.Ct. at 2040.

In delimiting the proper extent of this exception to the warrant requirement, the *Chimel* Court stated:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

*Id.* at 762–63, 89 S.Ct. at 2040.

The Court further remarked:

> No consideration relevant to the Fourth Amendment suggests any point of rational limitation, once the search is allowed to go beyond the area from which the person arrested might obtain weapons or evidentiary items.

*Id.* at 766, 89 S.Ct. at 2041 (footnote omitted).

Moreover, the *Chimel* Court perpetuated a requirement that a search incident to arrest be substantially contemporaneous with the arrest, cautioning that a search " 'remote in time or place from the arrest' " cannot be justified by the dual exigencies which underlay the search incident to arrest exception. 395 U.S. at 764, 89 S.Ct. at 2040 (quoting *Preston v. United States*, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964)). As a result, such a search is not permissible as incident to arrest. *See Preston*, 376 U.S. at 367–68, 84 S.Ct. at 883.

Thus, "[t]he scope of [a] search must be 'strictly tied to and justified by' the circumstances which rendered its initiation possible." *Terry*, 392 U.S. at 19, 88 S.Ct. at 1878 (quoting *Warden v. Hayden*, 387 U.S. 294, 310, 87 S.Ct. 1642, 1651, 18 L.Ed.2d 782 (1967) (Fortas, J., concurring)); *see also Chimel*, 395 U.S. at 762, 89 S.Ct. at 2039. Because the search incident to arrest exception to the warrant requirement can only be justified on the narrow grounds set forth in *Chimel*, the relevant inquiry in determining whether a particular search is a valid search incident to arrest must be whether "the area in question, at the time it was searched, [was] conceivably accessible to the arrestee—assuming that he was neither 'an acrobat [nor] a Houdini'?" [3]

The superior court in this case determined that Ricks' jacket was not within his immediate control after the time the police entered the bar with their weapons drawn. Accordingly, the court of appeals correctly resolved the issue on appeal in the portion of its opinion which is quoted by the majority today. In my view, the quoted portion of the opinion correctly applies *Chimel* to the facts at hand. Since the jacket was not in the area of Ricks' immediate control, there was no reasonable possibility that

---

**3.** *United States v. Lyons*, 706 F.2d 321, 330 (D.C.Cir.1983) (quoting *United States v. Mapp*, 476 F.2d 67, 80 (2d Cir.1973)); *accord United States v. Griffith*, 537 F.2d 900, 904 (7th Cir. 1976); *see Chimel*, 395 U.S. at 763, 89 S.Ct. at 2040. In this, I would not follow the lead of some courts in other jurisdictions that have credited arrestees with the ability to perform amazing feats in their efforts to reach a weapon or contraband. *See, e.g., People v. Perry*, 47 Ill.2d 402, 266 N.E.2d 330 (1971) (handcuffed arrestee detained in motel corridor by four officers could have obtained a weapon or evidence from purse on bed and dresser drawer in adjacent room); *State v. Cherry*, 298 N.C. 86, 257 S.E.2d 551 (1979) (upholding search under rug in corner of room opposite from arrestee although arrestee handcuffed, seated, and in custody of several officers), *cert. denied*, 446 U.S. 941, 100 S.Ct. 2165, 64 L.Ed.2d 796 (1980).

Ricks could access it either to obtain a weapon or to destroy evidence. As a result, the warrantless search of the jacket cannot be justified by the search incident to arrest exception.[4]

However, in its attempt to explain its discussion of the search incident to arrest exception in *Dunn v. State*, 653 P.2d 1071 (Alaska App.1982), the majority of the court of appeals goes farther than is necessary to support its application of *Chimel* to the search of Ricks' jacket. In doing so, the court creates precedent which I believe is insupportable. For example, the majority suggests that the dual exigencies which justify a warrantless search incident to arrest only limit the physical area in which a search incident to arrest may be conducted, but that "they do not necessarily limit the time and circumstances in which the warrantless search may be conducted." *Ricks*, 771 P.2d at 1366. In my view, however, *Chimel* and *Preston* clearly reject such a proposition. *See Chimel*, 395 U.S. at 763–64, 89 S.Ct. at 2040; *Preston*, 376 U.S. at 367–68, 84 S.Ct. at 883.

Because I disapprove of the court's observations, and I agree that the court's dicta should hold no precedential value for future cases, I join in the order vacating the court's opinion to the extent it goes beyond the passage quoted by the majority today.

---

**4.** As the court of appeals observed, the warrantless seizure of Ricks' jacket clearly was justified. Because the police were lawfully in the bar, the jacket was visible to anyone on the premises, and the police had probable cause to believe that the jacket contained evidence of a crime, they were entitled to seize it. *See Payton v. New York*, 445 U.S. 573, 586–87, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980); *Coolidge*, 403 U.S. at 465, 91 S.Ct. at 2037.